[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR CHANGE OF VENUE II. REVISED
The defendant Adrian Peeler has moved pursuant to Connecticut Practice Book § 41-23
for an order transferring this case to a court location other than Waterbury. On June 30, 1999, a previous motion for change of venue was granted by the court, Ford, J., which changed the location of the trial from Bridgeport to Waterbury. The court at the time had determined that because of extensive pre-trial publicity surrounding his case that Adrian Peeler could not receive a fair and impartial trial in Bridgeport.
Although the defendant now makes different claims in support of the new motion for change of venue, the rules that govern this motion have not changed. The defendant still bears the burden of showing that his trial in Waterbury would not be fair and impartial. Also, the trial court exercises its discretion in acting upon this motion. State v. Townsend,211 Conn. 215, 224.
Relying on the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §§ Eight, Nine and Nineteen of the Connecticut constitution, the defendant makes three distinct claims which the court will deal with in the order they were presented.
First, the defendant claims that the selection of Waterbury as the site for his trial violates his common law rights to have his case tried in a community in which, within reasonable limits, resembles the community and character of the judicial district in which the crime was committed. The defendant cites the ABA Standards for Criminal Justice, Trial by Jury, 3rd Edition (Standard 15-1.4. and Commentary) and various other cases, but ignores the balance of the very standard that he relies upon and ignores Connecticut case law which undermines the continued validity of the common law concept of "vicinage". The court accepts for purposes of this argument that Bridgeport has a combined estimated minority population (Blacks and Hispanics) of 30.5% as compared with a combined estimated minority population of 17% for the Waterbury judicial district. The Court, however, does not accept that this difference alone results in any unfairness to the defendant[1], neither does the CT Page 12635 comparison of the relative total population of the judicial districts being compared. Fairfield's total estimated population is 298, 848 and Waterbury's total estimated population is estimated at 211, 572, which figures are furnished by the State of Connecticut Department of Public Health and do not lead to any conclusion of unfairness.
The ABA Standard cited also includes as suggested factors in fairly determining a fair site for a trial upon the granting of a motion for a change of venue: (1) the nature and extent of pre-trial publicity; (2) the relative burdens on the respective courts in changing to the proposed venue; (3) the relative hardships imposed on the parties, witnesses and other interested parties with regard to the proposed venue; and (4) the racial, ethnic, religious and other relevant demographic characteristics of the proposed venue as they may affect the likelihood of a fair trial by an impartial jury. A review of the entire criteria suggested by the ABA leads this court to believe that nothing in the information presented to the court leads it to conclude that the fairness and impartiality of the jury would in any way be affected by trial of the case in Waterbury. The Waterbury judicial district contains a significant minority population which satisfies the suggested racial criteria for a proposed site of a new trial. In addition, there is no evidence on any of the other points suggested in the criteria that would work against the selection of Waterbury as the site of this trial. Lastly, the continued viability of the "vicinage" rights claimed by the defendant are brought into question by the ruling of the Connecticut Supreme Court in State v.Orsini, 187 Conn. 264, 270 wherein that court explains the concept of "vicinage" as designed to guarantee the jury be a body of people somewhat acquainted with the persons and events involved so they could rely on their own previous knowledge in reaching a verdict; obviously, the exact situation we seek to avoid in the trial.
Second, the defendant claims that the comparison of the minority populations of the Waterbury and Fairfield judicial districts represents such a drastic reduction in minority representation that his state and federal rights to pick a fair and impartial jury will be compromised. This Court's analysis of the same data furnished by the defendant leads to a different conclusion. There is nothing in the statistics provided that lead this court to believe that the defendant's trial in Waterbury will lead to the type of "systematic exclusion" of any segment of the community. To rule otherwise once again ignores the fact that Waterbury does have a significant estimated minority population from which a fair and impartial jury can be selected.
Third, the defendant claims the selection of Waterbury was arbitrary and an abuse of discretion. Keeping in mind that the defendant was granted exactly what he asked when his case was transferred, that he made no request for any specific site for the change of venue, and that the rules of the court governing a change of venue grant the court the power on its own motion to transfer the case to any other judicial district, this court fails to see how the defendant can now claim unfairness as the result of the Court granting his request. Connecticut Practice Book § 41-23
The Motion for Change of Venue II is denied.
THOMAS V. O'KEEFE, JR.